The opinion of the court was delivered by
Brewer, J.:
The question presented in this case is, whether the plaintiff in error is entitled to. the benefit of the occupying *338 claimant act. The facts are these: The land in dispute was assigned to Julia Goodell, a half-breed Indian, and a member of the Sac-and-Fox tribe of the Mississippi, under article 10 of the treaty ratified July 9th, 1860. (15 U. S. Stat. at Large, 470.) In 1862 Mrs. Goodell conveyed it by her warranty deed to Perry Fuller, a white man, and not a member of the tribe. This deed was duly recorded in the office of the register of deeds of Franklin county, on the day it was executed. Under the treaty, however, this deed “was a nullity, and conveyed no title,” as was held by this court in Pennock v. Monroe, 5 Kas., 578. Nevertheless, in October 1863, Fuller gave his bond to Krause, conditioned to convey to him said land (upon receiving the purchase-money, $1,000,) by a deed in fee simple. Krause then entered, and made lasting and valuable improvements, and has ever since remained in possession, under Fuller’s bond. By virtue of the amended 17th article of the Sac-and-Fox treaty, concluded February 18th, 1867, (15 U. S. Stat. at Large, 498,) the government conveyed the land to Mrs. Goodell by a patent in fee simple, thus abrogating the restraint upon its alienation imposed by the old treaty. She then conveyed the fee to the defendant in error, who brought ejectment, and recovered, and who now claims both land and improvements, and denies the right of plaintiff in error to the benefit of the occupying claimant act. That Krause brings his case within the letter of the law, is evident. He is “in quiet possession,” and holds “the same by bond from and under a person claiming title by deed, duly authenticated and recorded,” and is thus within the second class of cases provided for in the statute. (Code of 1868, § 601; Comp. Laws 1862, ch. 25, § 1.) He is within the spirit of the law which aims to secure compensation to him who, in a mistaken conviction of ownership, meliorates the land he occupies with lasting and valuable improvements. What equitable claim has the defendant in error upon these improvements? Her labor never put them there; her money never paid for them. Shall she take the fruits of his toil and money, without compensation? He holds under a regular *339 chain of title from the original owner; and because she by law-may and actually does repudiate her first sale and conveyance, does it savor of equity and good conscience to permit her or her subsequent grantee to retake, not only the land she has sold, but also all the improvements the purchaser has placed on the land, on the faith of the title she conveyed? He is also within the reach of the adjudicated cases. This statute was taken from Ohio, and of course the judicial construction given there prior to its adoption here is authority. In Glick v. Gregg, 19 Ohio, 57, it was decided that the statute applied to cases where the claimant himself held by deed duly authenticated and recorded. In Beardsley v. Chapman, 1 Ohio St., 119, this construction was repudiated, but it was decided that, the statute applied where the claimant held by deed, bond, or devise from one claiming title by deed duly authenticated and recorded.
But again: The title to this land passed from government to Julia Goodell. She conveyed by a deed regular in form, and apparently valid, and from her grantee Krause obtained his title. The defect in the title does not appear on the records or conveyances, but arises from a disability to convey in Mrs. Goodell. It seems to us this is a “plain and connected title, derived from the records of some public office,” and therefore brings Krause within the first clause of the statute. Of course the words, “plain and connected title,” as used here, do not import a perfect title; for he who holds by such has no need of the occupying claimant act. It implies a defective title, and refers only to the- appearance of the record. It applies to a case like the one at bar, where, though there be a regular succession of conveyances, there is a disability in some grantor which prevents the title from actually passing.
It is claimed, however, in this case, that, to allow Krause the benefits of the occupying claimant act, “would in effect defeat the operation of the Sac-and-Fox treaty of July 9th, 1860, and violate a paramount federal law.” It may be conceded that neither the title nor possession of the Indian owner, *340 secured by treaty with the United States government, can be disturbed by state legislation; and if Mrs. Groodell were plaintiff in the action, seeking to recover possession, it is probable she would be entitled to both land and improvements, (though as that question is not before us we do not decide it.) But this property protection, guarantied to the Indian owner, is a personal privilege, and does not run with the land. Mrs. Groodell has parted with the title, and the protection which the federal law threw around this land has ceased. The present owner looks to the state law for the measure of her rights and liabilities. She can no more invoke the immunities of her grantor as to the land, in this, than in the matter of taxation, liability to seizure and sale on execution, or any other exemption secured by treaty to ■Indian owners of land within this state. We need not inquire whether any prior party in the chain of title could have set at naught the state law for the protection of occupying claimants. It is enough that the present owner has no such immunity.
The judgment of the district court will be reversed, and the case remanded with instructions to grant to said Krause the benefits of the occupying claimant act.
Kingman, C. J., concurring.